**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

AALIYAH TAYLOR,

            Plaintiff,

v.

AMAZON.COM, INC.,

            Defendants.

Civil Action No.

Jury Trial Demand

**COMPLAINT FOR DAMAGES, DECLARATORY AND EQUITABLE RELIEF**

Plaintiff, by and through undersigned counsel, Jesse Kelly P.C., files this Complaint for Damages and Equitable Relief, and shows the Court as follows:

**I.      Preliminary Statement**

1.      This action seeks actual damages, declaratory, injunctive and equitable relief, compensatory damages, and costs and attorney's fees for the disability discrimination suffered by Plaintiff Aaliyah Taylor ("Ms. Taylor") in her treatment by Defendant, Amazon, Inc., ("Amazon").

**II.     Jurisdiction**

2.      This action is brought for discrimination, failure to accommodate, and hostile work environment pursuant to the Rehabilitation Act of 1973 as amended, §§ 501, 504, and 510, 29 U.S.C. §§ 791. The jurisdiction of this court is invoked to secure protection and redress deprivation of rights secured by federal law which prohibits discrimination against employees because of their disability.

3.      The jurisdiction of this Court is invoked pursuant to its original jurisdiction over cases and controversies arising under federal law, pursuant to 28 U.S.C. § 1331, and all prerequisites to bringing this suit have been met. This suit is properly before the court.

4.      Plaintiff made timely informal Equal Employment Opportunity (hereinafter "EEO") contact regarding counseling the claims at issue in this action, and following her EEOC investigation, Plaintiff received her right to sue on or about May 7, 2020.

5.      Plaintiff timely filed a formal complaint of discrimination on August 3, 2020. *See.* Ex. 1.

## III.    Venue

6.      This action properly lies in the United States District Court for the Northern District of Georgia, pursuant to 29 U.S.C. § 1391(b), because the claim arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in this judicial district.

## IV.    Parties

7.      Ms. Taylor was a full-time employee with the Amazon at all relevant times. During this period, Ms. Taylor worked as a Level 5, Senior Regional Experience Manager at four Atlanta area retail malls (Lenox Square, Mall of Georgia, Perimeter Mall and North Point Mall).  Ms. Taylor is a resident of Fulton County, GA and is a citizen of the United States.

8.      Amazon, Defendant, is a private sector employer and has offices throughout the

2

United States, including in Atlanta, GA. Amazon is an employer, engages in an industry affecting commerce, and, upon information and belief, employs more than 500 regular employees.

## V.    Facts

9.    Amazon hired Plaintiff as a Level 4, Retail Experience Manager, on or about June 20, 2016.

10.    Plaintiff was promoted on or about September 21, 2017 to Level 5, Senior Retail Experience Manager.

11.    Plaintiff's duties included spending time each day at one of four Atlanta area retail mails to audit operations and develop Assistant Retail Experience Mangers (AREM) at Amazon kiosk.

12.     On October 25, 2018, Plaintiff reported a work-related injury involving severe pain in her neck and shoulder while working on her laptop.

13.    On October 31, 2018, Plaintiff visited Dr. Ellis I. Efobi and was diagnosed with a sprain of the joints and ligaments of the neck, and a sprain of the ligaments of the upper back.

14.    On October 31, 2018, Dr. Efobi restricted Ms. Taylor from prolong bending and twisting of the injured areas and lifting more than 20lbs above Plaintiff's shoulders. Dr. Efobi provided Plaintiff a Cervical Strain and Sprain treatment plan for at home and work in addition to medication and physical therapy.

15.    On October 31, 2018, Plaintiff temporarily requested to telecommute, in accordance with Amazon's policies, or at the Amazon Web Services office

building. Defendant declined.

16. Plaintiff soon after returned to work at Amazon.

17. On November 7, 2018, Plaintiff had a follow up appointment with Dr. Efobi for continuing pain. Dr. Efobi restricted complainant from bending, twisting, and lifting anything greater than 10lbs. Dr. Efobi additionally recommended Plaintiff request to work from a desk with monitor at eye level and adjustable chair.

18. On or about November 13, 2018, Plaintiff requested from Davida Pope, Workers Compensation Manager, and Karin Turner, Regional Accommodations Manager, a medical leave of absence.

19. On December 26, 2018, Karin Turner, Accommodations Manager, called Plaintiff to return to work. Plaintiff expressed reservations because her medical leave had not expired, and she did not have the accommodations she sought.

20. On December 26, 2018, Deidra Suber, supervisor, called and informed Plaintiff that her medical leave was being shortened and that she was due back to work the next day. Plaintiff expressed her concerns about returning to work early due lingering pain from her prior work-place injuries.

21. On January 10, 2019, Deidra Super sent a text message to Plaintiff inquiring on how her return to work had been. Plaintiff responded that she still experienced discomfort resulting from a pinched nerve but conceded the workspace riser helped.

22. Between February 26, 2019 through February 28, 2019, Plaintiff notified her

4

supervisor and Assistant Retail Experience Managers (AREM) that she
would be taking sick leave.

23.     Despite her absence, Plaintiff still made herself available for scheduled
teleconferencing calls with her supervisor, REMs, and AREMs on February
27, 2019.

24.     On March 3, 2019, Plaintiff was terminated from Amazon by Deidra Suber
and Kaitlyn Andrus.

25.     Plaintiff was never placed on an Amazon Pivot for performance
improvement. *See* Ex. 2.

## VI.     Count I: Violation of the Rehabilitation Act of 1973: Hostile Work Environment

26.     Ms. Taylor incorporates by reference paragraphs 1-25 of her complaint as if
fully set forth herein.

27.     This harassment had the purpose or effect of unreasonably interfering with Ms.
Taylor's work performance and/or creating an intimidating, hostile, or offensive
work environment.

28.     There is basis for imputing liability to the Defendant for the actions of Ms. Taylor's
supervisor, Ms. Deidra Suber, in creating the hostile work environment.

## VII.     Count II: Violation of the Rehabilitation Act of 1973: Retaliation

29.     Ms. Taylor incorporates by reference paragraphs 1-25 of her complaint as if
fully set forth herein.

30.     Plaintiff expressed to Deidra Suber her reasonably held belief in opposition to
reporting to work before her medical leave expired.

31.     Ms. Taylor was terminated from Amazon on March 5, 2019.

32.     There is reason to believe Plaintiff's reluctance to return to work before her medial

5

leave expired and her subsequent sick leave between February 26, 2019 and

February 28, 2019 resulted in her termination.

**VIII.   Prayer for Relief**

33.      Wherefore, Ms. Taylor prays that this Court:

     a.      Declare the conduct engaged from Amazon to be in violation of Ms.

        Taylor's rights;

     b.      Award Ms. Taylor compensatory damages;

     c.      Award Ms. Taylor backpay;

     d.      Award Ms. Taylor cost and attorney's fees; and

     e.      Grant such other relief as it may deem just and proper.

**IX.      Jury Demand**

34.      Ms. Taylor request a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted on this 4th Day of August, Two Thousand Twenty.

/s/ Jesse L. Kelly
GA State Bar No.
935869
Jesse Kelly PC
3355 Lenox Rd., Suite 75
Atlanta, GA  30326
Phone: 678-460-6801
Email: jesse@jkellypc.com

ATTORNEY FOR PLAINTIFF

# EXHIBIT 1

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Aaliyah Taylor**<br>**741 Morosgo Drive NE, #1355**<br>**Atlanta, GA 30324** | From:  **Atlanta District Office**<br>**100 Alabama Street, S.W.**<br>**Suite 4R30**<br>**Atlanta, GA 30303** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **410-2019-07641** | **Aundrea L. Smallwood,**<br>**Investigator** | **(404) 562-6879** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Terry Tollefson
Digitally signed by Terry Tollefson
DN: cn=Terry Tollefson, o=EEOC,
ou=Atlanta District Office,
email=terry.tollefson@eeoc.gov, c=US
Date: 2020.05.05 12:55:25 -04'00'

For

May 5, 2020

Enclosures(s)

**Darrell E. Graham,**
**District Director**

*(Date Mailed)*

cc:

| | |
|---|---|
| **Heather M. Wright**<br>**Attorney**<br>**AMAZON**<br>**2301 McGee Street**<br>**8th Floor**<br>**C/O Littler Mendelson, P.C. - Gsc (Lcs)**<br>**Kansas City, MO 64108** | **Jeff Del Rio**<br>**SPIELBERGER LAW GROUP**<br>**4890 W. Kennedy Boulevard**<br>**Suite 950**<br>**Tampa, FL 33609** |

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appearance, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT 2

INSIDE
amazon

[                    ]   Search Inside    Search Everything   ⊘   🔖

## Pivot

Published by/Contact Information: Global Talent Management

中文 (Chinese)    Čeština    Deutsch    Español    Français
Italiano    日本語 (Japanese)    Polski    Română    Slovenský    Türkçe

While the majority of Amazonians meet or exceed our high bar, there may be times when an employee's performance does not meet expectations. In these situations, the employee's manager will take steps to help the employee improve to the required level by providing feedback, coaching, and support. If the employee's performance does not improve sufficiently after coaching and support, their manager may enter them into Pivot.

Pivot is for Level 4–7 employees (and L1–L3 employees in certain countries), and gives them three options:

- Improve their performance and stay at Amazon: We want to give our employees every opportunity to succeed at Amazon, which is why we give them the choice to complete a Performance Improvement Plan (PIP). A PIP defines areas for improving performance in a defined period of time. If the employee successfully completes the PIP, they are removed from Pivot.
- Leave Amazon with severance or other financial payment: While we are committed to helping employees improve their performance and remain with Amazon long-term, we understand that some employees may decide that Amazon is not the right place for them. Depending on the country where the employee works, they can leave Amazon with severance or other financial payment. Taking this payment is optional, and is intended to provide the employee with financial stability while they consider external options.
- Appeal their manager's decision to enter them into Pivot: We established an appeal process because employees and managers may reasonably disagree about the employee's performance. Employees that choose this option can either have their appeal reviewed by a manager outside of their skip-level manager's reporting chain, or have their appeal reviewed by a panel of Amazonians. If the employee's appeal is successful, they are removed from Pivot immediately and have the choice to be placed with another team or stay on their current team. If the employee's appeal is unsuccessful, they will remain in Pivot and can choose one of the other options (improve their performance or leave Amazon).

The specifics of each option vary by country, and a detailed overview is given to each employee when they are entered into Pivot. Throughout an employee's time in Pivot, they receive process guidance and support from a dedicated team of Pivot subject-matter experts called Career Ambassadors.